it seems to me that the court overlooked the fact that the obligation to pay rent continued to the end of the lease. All that the landlord did was as the agent of the lessee. He did not enter as of his original title. His entry did not terminate the lease, any more than the entry of any other person by the permission of the lessee would have had such operation. The Hevenor Case, supra, seems to have proceeded upon the theory that the claim of the landlord under these circumstances is one created and arising subsequent to the assignment, and hence not within the terms of the assignment. Brainerd v. Dunning, 30 N. Y. 211. It seems to me that no liability is created or discharged by the re-renting by the landlord on behalf of the tenant if so permitted by the lease. It may be uncertain what will be the ultimate amount required to be paid, but the liability to pay was created when the lease was executed. The liability of an indorser upon a note is uncertain, dependent upon the ability of the maker to pay; and yet such liabilities have been held to be properly included in the provision of an assignment. How much more certain is the liability of a lessee who has covenanted to pay rents, who is the primary debtor, and whose debt is reduced by the rent received by his agent on his behalf? How would the landlord proceed to enforce his claim for deficiency? Would he not sue upon the lease, setting up the covenant to pay rent as his cause of action? He could proceed upon no other theory, and would recover upon the covenant in the lease.

In the case of a note to which collaterals have been attached, the holder of the note, upon its not being paid, would bring his action upon the note, crediting any amount he had received upon the collaterals. So, in the case of a lease, the action would be upon the lease, the credits being the amount of rent received from the renting of the premises on behalf of the lessee; the liability being one created by the lease. It is to be observed that the words "debts due" do not necessarily mean debts which are presently payable, but include those which mature in the future. Leggett v. Bank, 24 N. Y. 283. It seems to me, therefore, that in the case at bar there was an existing obligation to pay a sum certain, subject, however, to reduction by the amount which the agent of the lessee should collect on his behalf.

The order appealed from should be affirmed.

---

(3 App. Div. 263.)

### CRAMPTON et al. v. BROOKLYN EL. R. CO. et al.

(Supreme Court, Appellate Division, Second Department. April 7, 1896.

ELEVATED RAILWAY — DAMAGES TO ABUTTING PROPERTY — RENTAL AND FEE VALUES.

　　In an action against an elevated railway company for injury to the fee value of abutting property, where there was great contradiction in the testimony as to the effect of the building of the road on the fee value, but it appeared that the rental value had declined only $60 per year, and the recognized ratio between rental and fee values was about 10 per cent., such decline should be taken as a basis for establishing the damages to the fee value.

Appeal from special term, Kings county.

Action by Ida F. Crampton and another against the Brooklyn Elevated Railroad Company and the Union Elevated Railroad Company to recover damages for injuries to property abutting on defendants' railroad. There was judgment for plaintiffs, and defendants appeal. Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

R. Percy Chittenden, for appellants.

Francis R. Whitney, for respondents.

PER CURIAM. This is the usual action for the recovery of past damages, and to restrain the operation and maintenance by defendants of its elevated railroad in the street upon which plaintiff is an abutting property owner. The court found that the damage to the rental value and occupancy of the premises since the construction of the road was the sum of $300, for which sum it ordered judgment. The court also found that the permanent maintenance of the railroad depreciates the fee value of the premises in the sum of $1,700, which sum it adjudged that defendants pay within 30 days, or be enjoined and restrained from continuing its railroad. It is claimed that the amount awarded as fee damage is excessive, and is not based upon any fair construction of the proof. This contention presents the only substantial question raised by this appeal.

The property affected is now used, and always has been, as a dwelling house. The lot is 20 feet front by 100 feet in depth, and the building a three-story brick, with a basement. The owners do not occupy the property, but rent the same, and the present lessee uses the house by leasing furnished rooms. Prior to the construction and operation of the railroad, the premises rented for $50 per month. They have rented for $45 a month since. The decline is therefore $60 a year. There was evidence tending to show that such depreciation was due in part to other causes than the condition produced by the railroad, and this view seems to have been adopted by the court, as the award for rental damage is at the rate of $50 a year. This being accepted as the basis for past damage, it is at once seen that there is a large and marked disparity between it and the sum awarded as fee damage. The record does not disclose any proof of actual sales or transactions with this property, and no satisfactory knowledge, on the part of the witnesses, of actual transactions with any property in that vicinity appears. The case therefore rested, respecting values, mainly upon its rental value, which was satisfactorily established, and upon the opinions of witnesses acquainted with the property and values generally. Two expert witnesses, Thorne and Cook, called by plaintiff, fixed the depreciation in fee value since the construction and operation of the road at from $3,500 to $4,000. Two experts, Rustin and Grace, were called by defendant. The former made the depreciation from $500 to $1,000, and the latter increased its value by $2,000 to $2,500. It is quite

apparent, therefore, that the expert testimony furnished very little aid in determining fee damage.

As to Thorne, after he had been examined quite fully, sufficient to exhaust his information, the court felt constrained to say that "he don't know anything of values in this vicinity." He was subsequently recalled, and gave some further testimony, and was then permitted to answer respecting fee values. It does not seem to us that his subsequent testimony changed in any essential respect his competency to speak upon the subject. But it was not improper to receive his testimony, as he evidently had some knowledge upon the subject. He stated that there was a recognized ratio between fee and rental values of this kind of property; that in 1885 the rental value was about 10 per cent. of the fee value. Cook states that in 1886, two years before the road was constructed, the fair ratio for rental returns would be about 12 years' purchase,—about 8 per cent.,—and the fair ratio at the present time would be 10 per cent. gross. Based upon the established rental value and the depreciation therefrom, his testimony shows that the fee damage did not exceed $400 to $500. Taking the whole testimony, it seems clear that the sum fixed as fee damage by these witnesses is quite arbitrary in its character. And the same may be said of the witness Grace, who represented the other extreme. The testimony of Rustin, who places the fee damage at from $500 to $1,000, seems to come much nearer what the actual fact is. His testimony is in substantial harmony with what the rental values establish, and the rental value is the only substantial basis upon which the testimony of the other experts can stand. The court ought to reject the statements of an expert on value when his testimony is at variance with any substantial basis, and can only be supported by the adoption of his arbitary standard.

We agree with the learned counsel for the respondent that fee damage is most satisfactorily established by ascertaining how the rental values have been affected by the act which interferes with the property. It is only where exceptional circumstances exist that this rule is the subject of exception. Sutro v. Railway Co., 137 N. Y. 592, 33 N. E. 334; Jamieson v. Railroad Co., 147 N. Y. 322, 41 N. E. 693. Of course, the inquiry is not limited alone to this, and the whole subject is to be considered as though the property were sought to be condemned by right of eminent domain. But only such damages as could be awarded therein can be considered on this branch of the case, and the subject is not left open to arbitary discretion, but must rest on proof. American Bank-Note Co. v. New York El. R. Co., 129 N. Y. 252–270, 29 N. E. 302.

Taking the most favorable view of this case in favor of the respondent, we are unable to see how a fee damage is established beyond the sum of $1,000. Of this sum defendants' proof is susceptible, and they cannot be heard to question the sufficiency of its basis. In this view of the case, we do not see that the defendants will be prejudiced by any of the rulings of the trial court, if we assume that technical error existed therein.

The judgment appealed from should be reversed, unless plaintiff consents to reduce the sum awarded as fee damages by $700 and interest, in which case the judgment, as modified, is affirmed, without costs to either party.　All concur.